UNITED STATES, Appellee

v.

James N. DURBIN, Technical Sergeant
U.S. Air Force, Appellant

No. 09-0380

Crim. App. No. 36969

United States Court of Appeals for the Armed Forces

Argued November 3, 2009

Decided January 20, 2010

ERDMANN, J., delivered the opinion of the court, in which BAKER,
STUCKY, and RYAN, JJ., joined.  EFFRON, C.J., filed a separate
dissenting opinion.

Counsel


For Appellant:  Captain Marla J. Gillman (argued); Major Shannon
A. Bennett (on brief); Colonel Nikki A. Hall and Colonel James
B. Roan.

For Appellee:  Major Coretta E. Gray (argued); Colonel Douglas
P. Cordova, Lieutenant Colonel Jeremy S. Weber, and Gerald R.
Bruce, Esq. (on brief).

Amicus Curiae for Appellant:  Christopher M. Hamp-Lyons (law
student) (argued); Alistair E. Newbern, Esq. (supervising
attorney) and R. Andrew Free (law student) (on brief) -- for the
Vanderbilt Legal Clinic.

Military Judge:  Bryan D. Watson

**This opinion is subject to revision before final publication.**

United States v. Durbin, No. 09-0380/AF

Judge ERDMANN delivered the opinion of the court.[1]

Technical Sergeant James N. Durbin was convicted of one specification of possessing child pornography at a contested general court-martial. The convening authority approved the adjudged sentence of reduction to E-2, confinement for one year, and a bad-conduct discharge. The United States Air Force Court of Criminal Appeals affirmed the findings and the sentence. United States v. Durbin, No. ACM 36969, 2008 CCA LEXIS 486, 2008 WL 5192441 (A.F. Ct. Crim. App. Dec. 10, 2008).

"A person has a privilege during and after the marital relationship to refuse to disclose, and to prevent another from disclosing, any confidential communication made to the spouse of the person while they were husband and wife and not separated as provided by law." Military Rule of Evidence (M.R.E.) 504(b)(1). The rule allows the privilege to be claimed by the spouse who made the communication or the other spouse on his or her behalf. However, where the privilege is claimed by one spouse on behalf of the other, the spouse upon whose behalf the privilege is claimed may waive the privilege. M.R.E. 504(b)(3).

---

[1] We heard oral argument in this case at the Vanderbilt Law School as part of the Court's "Project Outreach." See United States v. Mahoney, 58 M.J. 326, 347 n.1 (C.A.A.F. 2003). This practice was developed as part of a public awareness program to demonstrate the operation of a federal court of appeals and the military justice system.

United States v. Durbin, No. 09-0380/AF

We granted review to determine whether the military judge erred when he ruled that Durbin could not prevent his wife from testifying as to the statements she made during a marital communication. We also granted review to determine if the Air Force Court of Criminal Appeals erred when it found that the military judge's erroneous admission of evidence was harmless.[2]

Under the circumstances of this case, we hold that the military judge properly allowed Ms. Durbin to testify as to her statements made during the marital communication. We also agree with the lower court's conclusion that the admission of the erroneous evidence was harmless and therefore affirm the Court of Criminal Appeals.

BACKGROUND

Durbin's wife was working late one night on a homework assignment when she found pictures on her husband's laptop computer that she believed to be child pornography. Angry and

---

[2] We granted review of the following issues:

I.   WHERE THE MILITARY JUDGE FOUND THAT APPELLANT AND HIS WIFE HAD A PRIVATE CONVERSATION WHILE MARRIED AND NOT SEPARATED, WAS THE MILITARY JUDGE CORRECT THAT APPELLANT COULD CLAIM THE PRIVILEGE UNDER MIL. R. EVID. 504 ONLY AS TO HIS STATEMENTS DURING THAT CONVERSATION BUT NOT TO HIS WIFE'S AS WELL.

II.  WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ERRED IN FINDING THERE WAS NO HARM AFTER OVERTURNING THE MILITARY JUDGE'S RULING THAT APPELLANT'S ACT OF SHOWING HIS WIFE THAT HE HAD DELETED THE PICTURES HE SAID HE WOULD WAS NOT COMMUNICATIVE AND THEREFORE NOT PRIVILEGED UNDER MIL. R. EVID. 504.

upset, Ms. Durbin went upstairs and woke her husband and asked him to explain how the pictures got onto his computer. After initially denying knowledge of the pictures, Durbin said that it had been "a one-time thing." Although Ms. Durbin did not ask him to do so, Durbin said that he would delete the pictures and subsequently took the laptop and sat down on the couch. Ms. Durbin saw her husband move his hands over the laptop's touchpad, but did not look at the laptop's screen while he worked on the laptop.

As Durbin was sitting in front of the computer, he said "[h]ere, I'll delete them." A short time later, in what Ms. Durbin believed was an effort to appease her, Durbin turned the laptop screen towards her and said "They're deleted." Ms. Durbin told her husband that he needed to get professional help and she asked him to move out of the house.

Prior to trial, the Government moved in limine to admit the conversation between Durbin and his wife that occurred the night she discovered suspected child pornography on his laptop computer. Following a hearing on the motion in limine, the military judge allowed Ms. Durbin to generally testify as to the confrontation between the two of them, but did not allow her to testify as to any verbal statements made by her husband. He did, however, permit Ms. Durbin to testify about the actions Durbin took with the laptop computer as described above.

The Air Force Court of Criminal Appeals found that the military judge did not abuse his discretion in allowing Ms. Durbin to testify as to her statements, but that he did err in permitting her to testify about the actions Durbin took with the laptop computer. Durbin, 2008 CCA LEXIS 486, at *6-*9, 2008 WL 5192441, at *2-*3. The lower court went on to find that the military judge's error in admitting Ms. Durbin's testimony about Durbin's actions with the laptop computer was harmless. Id. at *9, 2008 WL 5192441, at *3.

DISCUSSION

We discussed the standard of review for marital privilege issues in United States v. McCollum, 58 M.J. 323, 335-36 (C.A.A.F. 2003):

> A military judge's decision to admit or exclude evidence is reviewed for an abuse of discretion. United States v. McElhaney, 54 M.J. 120, 132 (C.A.A.F. 2000); see United States v. Westmoreland, 312 F.3d 302, 306 (7th Cir. 2002) ("We review the trial court's resolution of a marital privilege issue for an abuse of discretion."). Whether a communication is privileged is a mixed question of fact and law. McElhaney, 54 M.J. at 131 (citing United States v. Napoleon, 46 M.J. 279, 284 (C.A.A.F. 1997)). We review a lower court's legal conclusions de novo, but we give a lower court's factual findings more deference, and will not reverse such findings unless they are clearly erroneous. United States v. Ayala, 43 M.J. 296, 298 (C.A.A.F. 1995).

The party asserting the marital privilege has the burden of establishing its applicability by a preponderance of the evidence. Id. at 336.

Ms. Durbin's Statements From the Marital Communication

Durbin argues that Ms. Durbin's statements that she was allowed to testify to at trial occurred during a marital communication and as such were privileged under M.R.E. 504. He notes that the rule allows either spouse to claim the privilege on behalf of the other. While he recognizes that the rule also allows a spouse on whose behalf the privilege has been asserted to waive the privilege, he argues that the military judge did not make any ruling as to waiver and implies that without such a ruling there was no waiver. According to Durbin, allowing Ms. Durbin to testify as to her statements "eviscerated the marital communications privilege and disclosed the nature of [Durbin's] statement to her."

The Government responds that the military judge did not err in allowing Ms. Durbin to testify as to her statements from the marital communication on two bases: the communication was not "confidential" as both spouses later discussed the incident with others; and, while M.R.E. 504(b)(3) allows one spouse to claim the privilege on behalf of the other spouse, it also allows the spouse for whom the privilege is claimed to waive the privilege, which Ms. Durbin did in this case by testifying.

In ruling on the motion in limine at trial, the military judge stated:

> [A]pplicable rules do not permit the Accused to
> prevent his wife from revealing the content of her own

statements. ("The privilege to prevent disclosure by anyone of confidential communications is held by the spouse who made them." U.S. v. Vandyke, supra, emphasis added.) As orally argued by the Defense Counsel, there may be some extreme cases where, if a witness spouse were allowed to testify as to her own prior statements to her husband, it would serve to destroy the purpose of the privilege (e.g., if the witness spouse had a conversation with her husband where she repeated her husband's words and then later testified to her own words -- the end result being that her husband's words nonetheless came before the trier of fact). However, this is not such a case. This Court finds that the statements by Ms. Durbin do not sufficiently mirror the Accused's such that the Accused's right to invoke the confidential communication privilege pertaining to his own statements is in any way diminished. This conclusion is based upon the plain language of MRE 504(b).

M.R.E. 504(b)(3) provides in part:

Who may claim the privilege. The privilege may be claimed by the spouse who made the communication or by the other spouse on his or her behalf. The authority of the latter spouse to do so is presumed in the absence of evidence of a waiver . . . .

While the rule on its face allows either spouse to claim the privilege on behalf of the other, it also allows the spouse upon whose behalf the privilege was claimed to waive the privilege. The rule requires "evidence" of a waiver. Certainly the voluntary testimony of Ms. Durbin as to her statements made during the marital communication constituted a waiver of the privilege claimed on her behalf by her husband.

Despite this clear language of the rule, Durbin argues that the rule should be construed to prohibit the disclosure of both sides of the marital communication when the privilege is claimed

7

by one spouse, citing several federal circuit court decisions.[3]

While the federal marital privilege protects both sides of a

marital communication, that privilege is based on federal common

law while the marital privilege in the military justice system

is created by M.R.E. 504.

> M.R.E. 501 provides:
>
> (a)  A person may not claim a privilege with respect
>      to any matter except as required by or provided
>      for in:
>
> . . . .
>
> (3)  These rules or this Manual; or
>
> (4)  The principles of common law generally recognized
> in the trial of criminal cases in the United States
> district courts pursuant to rule 501 of the Federal
> Rules of Evidence insofar as the application of such
> principles in trials by courts-martial is practicable
> and not contrary to or inconsistent with the code,
> these rules, or this Manual.

As the President has chosen to adopt a more restrictive marital

privilege for the military, the federal circuit court cases

interpreting federal common law are not relevant to our analysis

of that issue.

We agree with the analysis of the military judge and we

note his concern that in a situation where one spouse has

claimed the marital privilege and the other spouse's statements

repeat or reveal the privileged statements of the claiming

---

[3] United States v. Montgomery, 384 F.3d 1050, 1059 (9th Cir. 2004); United States v. Bahe, 128 F.3d 1440, 1442 (10th Cir. 1997).

spouse, admission of those statements may violate the marital privilege. We do not, however, have that situation here. Ms. Durbin's testimony as to her statements did not repeat nor reveal any of her husband's protected statements. As we find that Ms. Durbin's testimony as to her statements was authorized under M.R.E. 504(b)(3), we need not address the Government's argument that the communication itself was not privileged.

Whether the Erroneous Admission of Evidence was Harmless Error

The military judge allowed Ms. Durbin to testify as to Durbin's actions with the laptop computer the night she confronted him with the pictures of child pornography. She testified that she left one of the pictures of suspected child pornography on the screen of the laptop when she went to wake up Durbin. After she asked him for an explanation, she testified that he sat on the couch and put the laptop on his lap. She testified that she could see his hands moving over the touchpad and he then turned the computer toward her so she could see the screen and nothing was on the screen.

In his motion in limine ruling, the military judge held:

22. The Accused's acts: Despite the Defense's arguments to the contrary, this Court finds that the physical acts by the Accused on the evening in question were not protected communications under MRE 504. Simply put, acts do not become privileged simply by being done in the presence of a spouse. Upon consideration of the facts and law on this issue, this Court finds that the Accused's acts of going to the laptop computer and deleting certain data were neither

9

      communicative per se, nor manifested an intent by the
Accused to convey a private message to his spouse --
the Accused's affidavit notwithstanding.  This
conclusion is based, in part, on the Court's
evaluation of Ms. Durbin's minimal motive to
fabricate, and the Accused's substantial one.
Additionally, this Court personally evaluated the
credibility of Ms. Durbin, and finds her to be very
credible.  See Martel, supra, and U.S. v. Peterson, 48
MJ 81 (CAAF 1998).

The Court of Criminal Appeals found that the military judge's ruling on this issue was clearly erroneous.  Durbin, 2008 LEXIS 486, at *9, 2008 WL 5192441, at *3.  The lower court noted that while the acts of one spouse generally do not constitute confidential communications with the other spouse, they may do so if the acts are intended to convey a private message to the other spouse.  Id. at *7-*8, 2008 WL 5192441, at *3 (citing and comparing United States v. Lustig, 555 F.2d 737, 748 (9th Cir. 1977) with United States v. Lewis, 433 F.2d 1146, 1151 (D.C. Cir. 1970)).  Reviewing the military judge's findings of fact, the Court of Criminal Appeals held:

      As the facts indicate, the appellant told Ms. GD that
he would delete the child pornography images from his
laptop computer after she confronted him about the
images.  He then proceeded, as Ms. GD surmised, to
delete the images and showed Ms. GD the laptop screen.
Nothing could be clearer, given the context and timing
of the appellant's actions, that by making the key
strokes and showing Ms. GD the laptop screen, he was
telling Ms. GD that he had deleted the images.  His
actions were a confidential communication and the
military judge abused his discretion in admitting
evidence of such.

Id. at *8-*9, 2008 WL 5192441, at *3.

On appeal to this court, Durbin argues that while the lower court correctly found that the testimony concerning his actions was erroneously admitted, it erred in finding that the error was harmless. Assuming without deciding that Durbin's actions with the laptop computer were a communication protected by M.R.E. 504 and testimony concerning his actions was erroneously admitted, such error was harmless. "We evaluate prejudice from an erroneous evidentiary ruling by weighing (1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." United States v. Kerr, 51 M.J. 401, 405 (C.A.A.F. 1999) (citation omitted).

We agree with the Court of Criminal Appeals that the Government's case was very strong. The hard drives seized from Durbin's desktop and laptop computers contained thirty-two known or suspected images of child pornography. Ms. Durbin testified that she had earlier seen a folder full of child pornographic images on the laptop computer. Testimony established that the laptop computer was used almost exclusively by Durbin and the other individuals who had access to the computer testified that they did not view or download child pornography on either computer. The evidence also established that Durbin's Yahoo e-mail logon had been used to search a Yahoo group website entitled "young p0rn" and had conducted a search using the

following terms:  "preteen queens"; "sweet sexy preteens"; "sweet young girls"; "young hotties".

By contrast, Durbin's case was markedly less substantial. His case primarily consisted of attempting, through cross-examination, to establish that other individuals who had access to the computer may have accessed and retained the images. Turning to the materiality and quality of the challenged evidence, we conclude that even if Durbin's actions with the laptop could have been construed as an admission, we are convinced that the testimony was not material to the Government's case. The incident was the subject of three comparatively brief references in trial counsel's twenty-nine page findings and rebuttal arguments. Considering the other evidence admitted establishing his guilt, this testimony did not play a major role in the prosecution against Durbin. We therefore conclude that even assuming it was error to admit this testimony, the error was harmless and had no prejudicial impact on Durbin's substantial rights.

DECISION

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

EFFRON, Chief Judge (dissenting):

In the present appeal, the majority opinion would affirm the decision of the court below.  United States v. Durbin, __ M.J. __ (12) (C.A.A.F. 2010).  For the reasons set forth below, I respectfully dissent.  The military judge erred in permitting testimony by Appellant's wife that impermissibly revealed Appellant's confidential communications, and the military judge's further error in permitting her to testify about his communicative act constituted prejudicial error.

At trial, the prosecution introduced testimony by Appellant's wife that she confronted Appellant with the accusation that she had found images of child pornography on his computer.  Appellant's wife testified that she specifically asked Appellant:  "Could you explain this to me, please?"  She further testified as to portions of the ensuing two-way dialogue between husband and wife, including Appellant's communicative acts and her comments to him.

Appellant's wife testified pursuant to a ruling by the military judge that the testimony at issue was not precluded by the privilege for spousal communications under Military Rule of Evidence (M.R.E.) 504(b).  On review of Appellant's conviction, the Court of Criminal Appeals ruled that the military judge did not err in permitting Appellant's wife to testify as to the statements she made during their interaction, but that the

military judge erred in permitting her to testify as to Appellant's nonverbal acts.  United States v. Durbin, No. ACM 36969, 2008 CCA LEXIS 486, at *6-*9, 2008 WL 5192441, at *2-*3 (A.F. Ct. Crim. App. Dec. 10, 2008).  The lower court further held that the error was not prejudicial.  Id. at *9, 2008 WL 5192441, at *3.

I.   SPOUSAL PRIVILEGE UNDER THE MILITARY RULES OF EVIDENCE

Military Rule of Evidence (M.R.E) 504(b)(1) grants one spouse the privilege "to prevent another from disclosing, any confidential communication made to the spouse . . . while they were husband and wife . . . ."  One spouse may not waive another spouse's privilege without the privilege-claiming spouse's consent.  United States v. McCollum, 58 M.J. 323, 339 (C.A.A.F. 2003).

Under M.R.E. 510(a), waiver occurs when a privilege-holder discloses "any significant part of the matter or communication" claimed as privileged.  Waiver of the spousal privilege takes place when the "'overall substance of the conversation' [between spouses is] conveyed" to a third party.  United States v. Custis, 65 M.J. 366, 371 (C.A.A.F. 2007) (quoting United States v. McElhaney, 54 M.J. 120, 132 (C.A.A.F. 2000)).

As noted in the majority opinion, testimony by a spouse that describes a marital communication made by the testifying

spouse that repeats or reveals a marital communication made by the non-testifying spouse may waive the privilege.  Durbin, __ M.J. at __ (8-9).  This would apply, for example, to the following dialogue between two spouses:  the first spouse (the privilege-claimant) initiates a conversation by saying, "I can't keep a secret any longer -- I did X, Y, and Z, and I'm guilty,"; and the second spouse (the testifying spouse) responds by saying, "Your willingness to acknowledge that you did X, Y, and Z, and that you're guilty is the first step to recovery." Consistent with the purpose of the privilege, the testifying spouse could not testify at trial as to his or her own marital communication because that would repeat the other spouse's confidential communication.

The privilege applies with equal force to testimony that reveals the "overall substance" of confidential communications even if not amounting to a literal word for word repetition of the privilege-claimant's remarks.  For example, in the hypothetical described in the preceding paragraph, the overall substance of the confidential statement would be revealed if the testifying spouse were to testify as follows:  "I asked him to explain his criminal conduct.  We spoke about it.  Then I asked him to stop committing these crimes."  In the context of a criminal trial, a factfinder could reasonably infer from such

testimony that the privilege-claimant had been confronted with an accusation of criminal conduct and had admitted guilt.

II.  THE SIGNIFICANCE OF THE TESTIMONY FROM APPELLANT'S SPOUSE

The testimony from Appellant's spouse revealed the "overall substance" of Appellant's confidential communications.  The members were well aware that the communication involved a dialogue about the charged misconduct.  Appellant's spouse testified that she began the dialogue by confronting him with an accusatory question ("Could you explain this to me, please?").  She further testified about his reactions "[a]fter we spoke."  In the course of testifying about a dialogue in which she asked Appellant to "explain" the presence of child pornography on his computer, Appellant's wife testified that he took and used the laptop; that he showed her that the images were gone; and that she commanded Appellant to seek counseling and leave the house.  Although as a general matter there may be any number of reasons why a wife might ask a husband to seek counseling and leave the marital home, the discussion here took place in the immediate context of her discovery and Appellant's conduct.  In that setting, it is quite likely that members of the panel inferred that, during this conversation, Appellant admitted possessing the images of child pornography and accepted responsibility for them.

Although the panel members might not have deciphered Appellant's exact words from the testimony by Appellant's spouse, a panel member could reasonably have inferred that Appellant made an admission of guilt to his wife -- an admission protected by a privilege. In this case, the testimony by Appellant's wife waived his privilege without his consent. The military judge erred by permitting her to testify in a manner that revealed his admission of guilt.

### III. PREJUDICE OF ADMITTING THE COMMUNICATIVE ACT

The lower court held that other testimony by Appellant's wife -- that Appellant manipulated the laptop and showed her its blank screen -- was a communicative act protected by spousal privilege, but that the military judge's erroneous admission of this testimony did not prejudice Appellant. The majority opinion would affirm. I respectfully disagree.

To determine "prejudice resulting from the erroneous admission of evidence, we weigh '(1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question.'" McCollum, 58 M.J. at 342-43 (quoting United States v. Kerr, 51 M.J. 401, 405 (C.A.A.F. 1999)).

The Government had a strong, but not solid, case. At trial, the prosecution acknowledged that the Government's case was based on "circumstantial evidence." As such, the members had to infer that Appellant, and not another laptop user, downloaded and viewed the images of child pornography. The only direct evidence that Appellant used the laptop while it displayed images of child pornography is the evidence at issue here -- the testimony of Appellant's wife regarding Appellant's communicative act. The prosecution exploited that testimony, arguing to the members that "you can infer from that that he deleted [the images]."

The testimony of Appellant's wife concerning his communicative act constituted highly material evidence. While questioning Appellant's wife, trial counsel emphasized Appellant's actions, focusing on how "the accused physically respond[ed] when [Appellant's wife] asked him to explain" the images. In rebuttal, trial counsel argued that Appellant's communicative act was "[the] last piece of evidence combined with the circumstantial evidence in this case that shows the accused wrongfully and knowingly possessed images of child pornography." The prosecution apparently believed that the testimony from Appellant's wife about Appellant's communicative act was so essential to proving guilt that trial counsel characterized it as the "nail in the reasonable doubt coffin."

6

Once that "nail" is removed, we cannot have confidence that the evidence did not have a "substantial effect" on the findings. Custis, 65 M.J. at 371.  Under these circumstances, we should set aside the findings and authorize a rehearing.