# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Staff Sergeant CAMERON L. SHANK
## United States Air Force

## ACM 38607

## 23 November 2015

Sentence adjudged 10 January 2014 by GCM convened at Royal Air Force Mildenhall, United Kingdom. Military Judge: Christopher F. Leavey.

Approved Sentence: Bad-conduct discharge, confinement for 1 month, and reduction to E-1.

Appellate Counsel for the Appellant: Major Isaac C. Kennen and Captain Michael A. Schrama.

Appellate Counsel for the United States: Captain Collin F. Delaney and Gerald R. Bruce, Esquire.

Before

MITCHELL, SANTORO, and BROWN
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

SANTORO, Judge:

A general court-martial composed of officer and enlisted members convicted Appellant, contrary to his pleas, of negligent dereliction of duty, making a false official statement, and larceny of military property in violation of Articles 92, 107, and 121, UCMJ, 10 U.S.C. §§ 892, 907, 921.[1] The adjudged and approved sentence was a bad-conduct discharge, confinement for one month, and reduction to E-1.

---

[1] The members acquitted Appellant of the greater charged offense of willful dereliction of duty.

Appellant raises seven assignments of error: (1) the military judge erred by admitting statements that were not preceded by an Article 31, UCMJ, 10 U.S.C. § 831, rights advisement; (2) the military judge erred by admitting statements made by Appellant to his spouse; (3) the military judge erred by failing to dismiss, sua sponte, the charges of dereliction of duty and making false statements as multiplicious with the larceny charge; (4) trial counsel's findings argument was improper; (5) the military judge erred in his findings instructions; (6) the sentence was inappropriately severe; and (7) post-trial processing delays warrant relief. The final two issues are raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). We disagree and affirm.

*Background*

Appellant met Ms. SM, who would later become his wife, and within days moved into her mother's home. During the roughly two years they dated, Appellant told Ms. SM that he would be paid more if he was married and even more if he lived off base. They married on 29 January 2011 and 17 days later, on 14 February 2011, Appellant told Ms. SM he wanted a divorce. She immediately left their marital home and returned to her mother. Although they remained legally married for more than two years thereafter, both while Appellant was stationed at Dover Air Force Base and later when he was reassigned to Royal Air Force (RAF) Mildenhall, they never saw each other and had only minimal contact.

While at RAF Mildenhall, Appellant received both basic allowance for housing (BAH) and a "dual" overseas housing allowance (OHA)—one portion because he was overseas and a second (the "dual") portion because he was on an unaccompanied tour and his wife remained in the United States. During in-processing, Appellant electronically signed a form stating that he was married to Ms. SM, that she was residing in the United States, and that he was providing adequate support for her. This same electronic form also advised him that his receipt of those allowances was contingent upon his providing adequate support to Ms. SM. Appellant signed two additional hardcopy forms attesting that he was married and was providing adequate spousal support. Based on his self-certified marital status and wife's residence address, Appellant received approximately $34,000 in allowances that he would not have received had he not claimed he had a dependent living in the United States for whom he was providing support.

During the charged time frame, Appellant provided no support directly to Ms. SM. While he had directed a monthly allotment of $1,500 to a bank account in both their names, Ms. SM testified that she could not access that account and had never received financial support from him. Appellant's failure to provide support for his wife came to light when she learned that she was entitled to support and filed a complaint with the Inspector General.

Additional facts necessary to resolve the assignments of error are included below.

Appellant argues that the military judge erred by failing to suppress statements he made to Technical Sergeant (TSgt) KC, a member of the base finance office, who asked Appellant whether he could document his provision of spousal support.

TSgt KC testified that she received a call from Security Forces asking that she provide them copies of Appellant's leave and earnings statements for a specific date range. Shortly thereafter, she received a call from the base legal office asking whether finance had initiated recoupment action against Appellant because he was not providing spousal support. TSgt KC had never encountered that situation before, so she reviewed the relevant finance regulations to determine what, if anything, she needed to do. She received no guidance or direction from either Security Forces or the legal office regarding the recoupment process.

Pursuant to requirements in the finance manual, TSgt KC called Appellant. At the time of her call, although she knew Security Forces was investigating Appellant for something, she did not know that failing to provide support for a dependent could be a crime. She did not know whether disciplinary actions were pending or being considered. She did not know whether Appellant was represented by counsel.

TSgt KC identified herself, told Appellant she was calling from the finance office, and asked whether he had proof he was supporting his spouse to justify his receipt of dual overseas housing allowance benefits because his spouse remained in the United States. Appellant told her that he did not have any proof of support and that he was not supporting his spouse.

TSgt KC did not report this conversation to the legal office or Security Forces. The Government became aware of the call when interviewing TSgt KC in preparation for her testimony about housing allowances at Appellant's Article 32, UCMJ, 10 U.S.C. § 832, investigation.

Appellant and TSgt KC had a second conversation on a later date. Appellant came to the finance office to ask questions about the recoupment process and why it had been initiated. TSgt KC explained the process. During that conversation, Appellant told TSgt KC that he could not document any support to his spouse.

TSgt KC did not advise Appellant of his Article 31, UCMJ, rights during either of these conversations.

The military judge denied the motion to suppress, finding that TSgt KC was not acting for disciplinary or prosecutorial purposes and had an independent reason—the procedural requirements of applicable finance regulations—for contacting Appellant.

We review a military judge's ruling on a motion to suppress for an abuse of discretion. *United States v. Jones*, 73 M.J. 357, 360 (C.A.A.F. 2014). Under this standard, we review whether the military judge's findings of fact are clearly erroneous and whether his conclusions of law are correct. *Id.* "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion." *Id.* (quoting *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000)); *see also United States v. Flesher*, 73 M.J. 303 (C.A.A.F. 2014) (stating that an abuse of discretion occurs when a "military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law").

Article 31(b), UCMJ, provides:

> No person subject to this chapter [10 U.S.C. §§ 801 et. seq.] may interrogate, or request any statement from an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial.

Article 31(b) warnings are only required when "(1) the person being interrogated is a suspect at the time of questioning, and (2) the person conducting the questioning is participating or could reasonably be considered to be participating in an official law enforcement or disciplinary investigation or inquiry." *United States v. Swift*, 53 M.J. 439, 446 (C.A.A.F. 2000); *see also Jones*, 73 M.J. at 361. We examine the totality of the circumstances to evaluate this issue. *Id.*

In ruling on the motion to suppress, the military judge made factual findings and legal conclusions. Although Appellant's brief does not clearly identify the findings or conclusions with which he disagrees, his primary disagreement appears be with the military judge's factual finding that TSgt KC was not acting for purposes of disciplinary action or criminal prosecution at the time of her conversations with him.

The record amply supports the military judge's factual findings and his legal conclusions.[2] Whether TSgt KC was acting in an official law enforcement capacity requires "determining the scope of her authority as an agent of the military." *Id.* at 363 (citing *United States v. Cohen*, 63 M.J. 45, 51 (C.A.A.F. 2006)); *United States v. Price*, 44 M.J. 430, 432 (C.A.A.F. 1996) (agreeing with the finding that the questioner "went beyond what he was asked to do by the law enforcement officials").

---

[2] Whether the questioner was acting or could reasonably be considered to be acting in either capacity is a question of law which we review de novo. *United States v. Jones*, 73 M.J. 357, 361 (C.A.A.F. 2014).

> Members of the accounting and finance office are not criminal investigators, and they do not exercise disciplinary authority over military members not assigned to their office. They have an independent responsibility to ascertain the facts necessary to make proper payments of pay and allowances to military members, and to collect amounts owed by members to the government.

*United States v. Guron*, 37 M.J 942, 947 (A.F.C.M.R. 1993), *rev'd on other grounds*, 43 M.J. 373 (C.A.A.F. 1995) (mem.), *revised opinion aff'd*, 45 M.J. 12 (C.A.A.F. 1996) (mem.). Although this case differs from *Guron* in that Security Forces brought the discrepancy to finance's attention (whereas *Guron's* inquiry resulted from a base-wide survey), when examining the totality of the circumstances, we concur with the military judge that TSgt KC was not acting for purposes of disciplinary action or criminal prosecution, and thus the military judge did not err in denying the motion to suppress.

*Spousal Privilege*

Appellant and Ms. SM exchanged messages via Facebook concerning the extent to which Appellant was (or was not) supporting her and the various steps each had taken (or not taken) to finalize their divorce. The admissibility of these messages was contested at trial.

Military Rule of Evidence 504 establishes the marital privileges applicable to trials by courts-martial. With respect to confidential communications made during the marriage, it provides: "A person has a privilege during and after the marital relationship to refuse to disclose, and to prevent another from disclosing, any confidential communication made to the spouse of the person while they were husband and wife and not separated as provided by law."[3] Mil. R. Evid. 504(b)(1).

The military judge concluded that Ms. SM waived her privilege as to her own communications. He further ordered that any of her communications that necessarily revealed Appellant's privileged communication be redacted, finding that Appellant had intended the conversations to be private and had not waived the privilege.

The Government complied with the military judge's ruling, redacting the exhibit and limiting Ms. SM's direct examination accordingly. On cross-examination, trial defense counsel asked Ms. SM about Appellant's motivations for seeking a divorce and about various events discussed in the Facebook messages.

---

[3] Although trial counsel argued that the spousal privilege did not apply because of several exceptions to the privilege, the military judge found that the Government did not meet its burden to establish than an exception applied. We need not address that argument to resolve this issue.

Trial counsel then asked the military judge to reconsider his ruling excluding Appellant's Facebook messages, arguing that trial defense counsel's questions had waived the marital privilege. The military judge did not find that a blanket waiver had occurred but instead reviewed each of the Facebook messages the Government sought to introduce and invited comment from defense counsel. The military judge ultimately allowed some, but not all, of the messages into evidence.

While Appellant's brief correctly states, "Absent a proper judicial determination otherwise, all confidential conversations between Appellant and [Ms. SM] retained their privilege," he does not specifically identify what error occurred. In what appears to be an assertion of error, Appellant's brief states, "[T]he only reasonable conclusion is that these conversations were intended to be private between the parties and there is no indication of an intent by either party, at the time of the communication, to disclose the conversations to a third party."[4]

We cannot tell whether Appellant claims error in the military judge's initial ruling allowing Ms. SM's communications but excluding Appellant's communications, his subsequent ruling allowing portions of Appellant's messages, or both. In this respect, we note that trial defense counsel conceded that the marital privilege could be, and indeed was, pierced by the cross-examination of Ms. SM; the only disputed question before the military judge was the extent to which the privilege had been pierced. Nevertheless, we will review the military judge's initial and subsequent ruling regarding the marital communications between Ms. SM and Appellant.

We review a military judge's evidentiary rulings for an abuse of discretion. *United States v. McElhaney*, 54 M.J. 120, 132 (C.A.A.F. 2000) (citing *United States v. Schlamer*, 52 M.J. 80, 84 (C.A.A.F. 1999)); *see also United States v. Westmoreland*, 312 F.3d 302, 306 (7th Cir. 2002) ("We review the trial court's resolution of a marital privilege issue for an abuse of discretion."). Whether a communication is privileged is a mixed question of fact and law. *McElhaney*, 54 M.J. at 132. "The party asserting the marital privilege has the burden of establishing its applicability by a preponderance of the evidence." *United States v. Durbin*, 68 M.J. 271, 272 (C.A.A.F. 2010). "'Abuse of discretion' is a term of art applied to appellate review of the discretionary judgments of a trial court. An abuse of discretion occurs when the trial court's findings of fact are clearly erroneous or if the court's decision is influenced by an erroneous view of the law." *United States v. Freeman*, 65 M.J. 451, 453 (C.A.A.F. 2008).

Assuming we were to find error, a military judge's erroneous admission of a confidential marital communication is reviewed to determine whether any prejudice arising from such admission was harmless. *Durbin*, 68 M.J. at 275. "We evaluate

---

[4] We note that this is not the correct legal standard by which we evaluate claims of marital privilege.

prejudice from an erroneous evidentiary ruling by weighing (1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *Id.*

As noted above, the military judge initially found that Ms. SM had affirmatively waived her privilege and later found that trial defense counsel's cross-examination effectively waived Appellant's privilege with respect to certain statements. The military judge separately analyzed each statement when determining whether the privilege had been waived and conducted the necessary Mil. R. Evid. 403 balancing test with respect to each. Based upon our review of the record, and in the absence of a sufficiently-developed argument to the contrary, we conclude that the military judge did not abuse his discretion in admitting the communications at issue.

*Multiplicity*

Appellant next argues that Charges I (dereliction of duty) and II (false official statement) should be dismissed as they are both multiplicious with Charge III (larceny). Appellant did not raise this issue at trial.[5] This issue is therefore forfeited in the absence of plain error. *See United States v. Lloyd*, 46 M.J. 19, 21 (C.A.A.F. 1997).

Multiplicity in violation of the Double Jeopardy Clause of the Constitution[6] occurs when "a court, contrary to the intent of Congress, imposes multiple convictions and punishments under different statutes for the same act or course of conduct." *United States v. Anderson*, 68 M.J. 378, 385 (quoting *United States v. Roderick*, 62 M.J. 425, 431 (C.A.A.F. 2006)) (emphasis omitted). Accordingly, an accused may not be convicted and punished for two offenses where one is necessarily included in the other, absent congressional intent to permit separate punishments. *See United States v. Teters*, 37 M.J. 370, 376 (C.M.A. 1993); *United States v. Morita*, 73 M.J. 548, 564 (A.F. Ct. Crim. App. 2014), *rev'd on other grounds*, 74 M.J. 116 (C.A.A.F. 2015).

The Supreme Court laid out a "separate elements test" for analyzing multiplicity issues: "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). "Accordingly, multiple convictions and punishments are permitted . . . if the two charges each have at least one separate statutory element from each other." *Morita*, 73 M.J. at 564. Where one offense is necessarily included in the other under the separate elements

---

[5] Although Appellant did not raise multiplicity concerns, the military judge sua sponte inquired whether either side believed there to be an unreasonable multiplication of charges. After hearing argument from both sides, the military judge determined that the offenses focused on distinct misconduct and elected not to merge the offenses. As multiplicity was never specifically discussed or raised, however, we will treat this as forfeiture instead of waiver.
[6] U.S. CONST. amend. V.

test, legislative intent to permit separate punishments may be expressed in the statute, its legislative history, or "it can also be presumed or inferred based on the elements of the violated statutes and their relationship to each other." *Teters*, 37 M.J. at 376–77.

However, under plain error review, Appellant has the burden of showing that "(1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right of the [appellant]." *United States v. Girouard*, 70 M.J. 5, 11 (C.A.A.F. 2011). Plain error exists if the specifications are "'facially duplicative,' that is, factually the same." *Lloyd*, 46 M.J. at 23. "Whether two specifications are facially duplicative is a question of law that we will review de novo." *United States v. Pauling*, 60 M.J. 91, 94 (C.A.A.F. 2004).

The record reflects that Appellant engaged in the charged conduct at different times in different ways. For example, with respect to dereliction of duty, Appellant failed in his duty to provide support for his dependent. With respect to the false official statement, Appellant signed an official record with the intent to deceive. With respect to larceny, Appellant obtained or withheld money to which he was not entitled. While some of the relevant dates overlap, not all do. Accordingly, we find that the specifications, when considered in light of the facts apparent on the face of the record, were not factually the same. We have also compared the various offenses and while there is certainly a relationship between them, none is rationally derivative of another.

Moreover, Appellant argues that the Government charged each of the three allegations in the alternative based on the exigencies of proof, despite the Government's clear statement to the contrary. In conducting the *Blockburger* analysis, we concur with the Government that each specification contains at least one element that the others do not. *Anderson*, 68 M.J. at 385. We, therefore, find no plain error in the military judge not sua sponte finding the charges multiplicious.

*Findings Argument*

During voir dire, civilian defense counsel said, "[Y]ou're likely to hear this case involves [SSgt] Shank receiving overpayment of his entitlements. We will concede that he received too much pay, with that said; do you understand that the key issue is whether [SSgt] Shank intentionally collected benefits that he was not entitled to?" During findings argument, trial counsel referenced this statement:

> But beyond that, beyond that, just to make sure it's very clear, defense counsel in the very beginning of this case, when we first met with each other, told you as well, this—in question number 18 in our voir dire section: "You are likely to hear this case involves [SSgt] Shank receiving overpayment of his entitlements. We will concede that he received too much pay.

That said do you understand the key issue is whether Sergeant Shank intentionally collected benefits that he was not entitled to[?"] They told you that they conceded that he received too much pay. And if he received too much pay, it means he wasn't entitled to it; it means he wasn't supporting his spouse.

Again, in rebuttal, trial counsel argued, "That was confirmed again by the accused's own attorney, during voir dire, 'We concede that he received too much pay.'" Trial counsel further argued in rebuttal,

We know he was getting overpaid and that he agreed, defense admitted that he agreed he was being overpaid. . . . He knows he's getting it, and he knows he's not providing support, and that's wrongful. He's not entitled to it. Defense conceded that he was being overpaid. He is not entitled, and that is wrongful, and that is why he's guilty of larceny.

Trial defense counsel did not object to the prosecution's arguments; we, therefore, review for plain error. *See United States v. Erickson*, 65 M.J. 221, 223 (C.A.A.F. 2007); *United States v. Gilley*, 56 M.J. 113, 123 (C.A.A.F. 2001). "[T]o prevail under a plain error analysis, [the appellant] must demonstrate that: '(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right'" of the appellant. *Erickson*, 65 M.J. at 223 (quoting *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)).

"A trial counsel is charged with being a zealous advocate for the Government." *United States v. Barrazamartinez*, 58 M.J. 173, 176 (C.A.A.F. 2003). As a zealous advocate, trial counsel may "argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence." *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000); *see also United States v. Nelson*, 1 M.J. 235, 239 (C.M.A. 1975).

The defense theory of the case was that Appellant was "a simple man from Pennsylvania," who, while "dumb" or "stupid," did not realize that he had been overpaid at the time, and thus should not be held criminally liable. In support of that theory, trial defense counsel elicited testimony from TSgt KC that it was not uncommon for military members assigned overseas initially to be paid more than was due. Defense counsel also established that Appellant had not been specifically briefed about the allowances to which he was entitled.

Statements by counsel, whether during voir dire or in argument, are not evidence. Trial practitioners risk injecting unnecessary issues into an appellate record when commenting on matters or concessions not in evidence. However, on the facts of this

case, we need not decide whether the reference to trial defense counsel's statement in voir dire was plain or obvious error as we conclude that Appellant has not established prejudice. Trial defense counsel's voir dire statement was consistent with the defense case and the evidence adduced; and immediately after citing defense counsel's statement, the trial counsel reminded the court members that the issue was not whether Appellant had been overpaid, but whether he intentionally collected benefits to which he was not entitled.[7] This argument was consistent with the military judge's instructions. We do not find trial counsel's comments, "taken as a whole, were so damaging that we cannot be confident that the members convicted the appellant on the basis of the evidence alone." *United States v. Fletcher*, 62 M.J. 175, 184 (C.A.A.F. 2005).

*Instructions*

Two of the three specifications included the phrase "adequate support." In the dereliction of duty specification, it was alleged that Appellant willfully failed to provide adequate financial support; in the false official statement specification, it was alleged that the statement Appellant signed was false in that he had not provided adequate support for his dependent.

For the first time on appeal, Appellant asserts that the military judge's instructions should have defined "adequate support." We review de novo the military judge's instructions to ensure that they correctly address the issues raised by the evidence. *United States v. Maynulet*, 68 M.J. 374, 376 (C.A.A.F. 2010). Where, as here, trial defense counsel made no request for the instruction now at issue on appeal, Appellant has forfeited the objection in the absence of plain error. Rule for Courts-Martial (R.C.M.) 920(f).[8] If we find error, we must determine whether the error was harmless beyond a reasonable doubt. *United States v. Medina*, 69 M.J. 462 (2011).

A military judge is required to instruct the members on the elements of each charged offense. R.C.M. 920(e)(1). If a judge "*omits entirely* any instruction on an element of the charged offense, this error may not be tested for harmlessness because, thereby, the court members are prevented from considering that element at all." *United States v. Mance*, 26 M.J. 244, 255 (C.M.A. 1988). The military judge properly instructed the members of each of the elements of each specification at issue. Thus, reversal is not required under *Mance*.

Counsel have not pointed us to, nor are we aware of, any precedent requiring a military judge to define "adequate support" in this not-uncommon factual scenario. The

---

[7] Likewise, we do not view trial defense counsel's voir dire statement as akin either to a confessional stipulation, *see United States v. Bertelson*, 3 M.J. 314 (C.M.A. 1977), or a guilty plea, *see United States v. Care*, 18 C.M.A. 535 (1969). Appellant has not challenged his trial defense counsel's tactical decisions or theory of the case.

[8] Although we recognize that the rule speaks of "waiver," the mere failure to object to instructions at trial normally constitutes forfeiture. *United States v. Sousa*, 72 M.J. 643, 651–52 (A.F. Ct. Crim. App. 2013).

relevant Air Force Instruction (AFI), which was admitted into evidence, also references "adequate financial support" without defining that term. AFI 36-2906, *Personal Financial Responsibility,* ¶ 1.2.3.7.1 (30 May 2013). In the face of decades of military jurisprudence and regulatory guidance establishing an Airman's duty to provide adequate support without simultaneously seeing a need to define that term more specifically, we cannot conclude that the military judge's failure to do so sua sponte was plain error. *See United States v. Glover*, 50 M.J. 476, 478 (C.A.A.F. 1999).

*Sentence Appropriateness*

Appellant argues that his sentence to a punitive discharge was inappropriately severe. We review sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006); *United States v. Baier*, 60 M.J. 382, 384–85 (C.A.A.F. 2005). We "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine[], on the basis of the entire record, should be approved." Article 66(c), UCMJ, 10 U.S.C. § 866(c). We assess sentence appropriateness by considering the appellant, the nature and seriousness of the offenses, the appellant's record of service, and all matters contained in the record of trial. *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982); *United States v. Bare*, 63 M.J. 707, 714 (A.F. Ct. Crim. App. 2006), *aff'd*, 65 M.J. 35 (C.A.A.F. 2007). While we have a great deal of discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Healy*, 26 M.J. 394, 396 (C.M.A. 1988); *see also United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999).

The maximum sentence that could have been approved was a dishonorable discharge, confinement for 183 months, reduction to E-1, total forfeitures, and a fine. The approved sentence was clearly within the discretion of the convening authority. We have reviewed the entire record of trial, paying particular attention to the entirety of Appellant's military career, and conclude that the sentence is not inappropriately severe for this appellant who lied about supporting his spouse and wrongfully collected approximately $34,000 in allowances to which he was not entitled.

*Post-Trial Processing*

The convening authority took action 121 days after trial concluded. We review de novo an appellant's claim that he has been denied the due process right to a speedy post-trial review and appeal. *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2002).

There is a presumption of unreasonable delay when more than 120 days elapse between completion of trial and convening authority action. *Id*. at 142. Because the 121-day period in this case is facially unreasonable, we examine the claim under the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the

delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135. If we are able to conclude directly that any error was harmless beyond a reasonable doubt, we do not need to engage in a separate analysis of each factor. *See United States v. Allison*, 63 M.J. 365, 370 (C.A.A.F. 2006). Appellant asserts no prejudice and we can discern none from the record. Therefore, no *Moreno* relief is warranted.

Additionally, we may grant sentence relief under Article 66(c), UCMJ, even when we find no prejudice in unreasonable post-trial delays. *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002); *see also United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006) (finding delays were "such that tolerating them would adversely affect the public's perception of the fairness and integrity of the military justice system"). However, "[a]ppellate relief under Article 66(c) should be viewed as the last recourse to vindicate, where appropriate, an appellant's right to timely . . . review." *Tardif*, 57 M.J. at 225. Appellant argues that we should provide relief "to effectuate . . . deterrence" from future post-trial processing errors. Having examined the record, we conclude that *Tardif* relief for this one-day violation of the *Moreno* presumptive standard is not warranted.

## *Conclusion*

The findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

LEAH M. CALAHAN
Clerk of the Court