**UNITED STATES, Appellee,**

v.

**Jeffrey C. PETERSON, Specialist,
U.S. Army, Appellant.**

No. 97–0344.
Crim.App. No. 9502111.

U.S. Court of Appeals for
the Armed Forces.

Argued Dec. 17, 1997.

Decided April 28, 1998.

For Appellant: *Captain Mary J. Bradley* (argued); *Colonel John T. Phelps, II, Lieutenant Colonel Michael L. Walters*, and *Major Leslie A. Nepper* (on brief).

For Appellee: *Captain Troy A. Smith* (argued); *Colonel Joseph E. Ross, Lieutenant Colonel Frederic L. Borch*, and *Major Lyle D. Jentzer* (on brief).

*Opinion of the Court*

CRAWFORD, Judge:

On mixed pleas, appellant was convicted of attempted housebreaking, attempted larceny, conspiracy to commit housebreaking, and receiving stolen property (5 specifications), in violation of Articles 80, 81, and 134, Uniform Code of Military Justice, 10 USC §§ 880, 881, and 934, respectively. The convening authority approved the sentence of a bad-conduct discharge, 15 months' confinement, total forfeitures, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and the sentence.

We granted review of the following issue:

WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION WHEN HE DENIED THE MOTION TO SUPPRESS STATEMENTS PROTECTED BY THE HUSBAND–WIFE PRIVILEGE.

We hold that the military judge did not abuse his discretion when he held that the husband-wife privilege did not apply to the challenged statements.

### FACTS

At trial, appellant's wife declined to testify against him. *See* Mil.R.Evid. 504(a), Manual for Courts–Martial, United States (1995 ed.). The prosecution then sought to admit the statement which appellant's wife made to the police during the investigation of appellant. The statement was admitted under the residual hearsay exception of Mil.R.Evid. 804(b)(5).

The defense called appellant's wife to testify at a session under Article 39(a), UCMJ, 10 USC § 839(a). She stated under oath that her conversations with appellant were confidential communications made in private.

Essentially, appellant's wife claimed that there were three conversations which appellant had in front of her concerning the thefts. First, appellant spoke to her alone, after the stolen items were moved into their apartment. This is when appellant allegedly made the incriminating statements at issue in this case. Appellant's wife testified that no one was present when she and appellant discussed the theft. She stated, however, that appellant's brother "did walk through the door."

Appellant's wife also testified that the second conversation occurred outside, where appellant's brother told her his version of the events and appellant occasionally injected some comments. Appellant's wife maintained that appellant did not detail his role in the robbery while appellant's brother was present. Later, appellant and his wife had a third conversation in bed.

In her police statement, appellant's wife implied that appellant's brother was present when her husband told her he had tried to break into the ski shop. She indicated in her statement that "[b]oth ... [appellant's brother] and ... [appellant] told me how they had tried to break into the Smith Lake Ski Shop, that night, and got caught."

Appellant's wife testified at the Article 39(a) session that she told Special Agent (SA) Penland that appellant and his brother informed her about the criminal activity at different times. She further testified that SA Penland said it did not matter.

SA Penland, testified at the Article 39(a) session as well. He indicated that appellant's wife told him that "[t]hey were all standing around together. She indicated it was inside the apartment. It was where the basis of this statement came from." SA Penland denied having been told that there had been two distinct conversations, one between appellant and his wife alone, and another where appellant's brother was present as well. SA Penland also denied that appellant's wife ever told him her statement was incorrect in saying that appellant and his brother were together when appellant told her he tried to break into the shop.

The military judge redacted certain portions of the statement but left in several damaging statements because they "were not subject to the marital privilege and will not be redacted."

Appellant maintains that there is a presumption of privilege which the Government has not overcome. Appellant argues that the facts show appellant was alone with his wife when he told her he tried to rob the ski shop. He claims there is no factual basis to show that he was with a group of people when he spoke to his wife during that conversation.

The Government argues that appellant and his wife were not alone when appellant told her he had tried to break into the ski shop. It points to the police statement of appellant's wife and the testimony of SA Penland to support its position.

## DISCUSSION

■ In view of the military judge's redactions at trial, the only question on appeal concerns whether a third party was present during the husband-wife conversation in which appellant made incriminating statements.

The Military Rules of Evidence, unlike the Federal Rules of Evidence, codify the privilege rules. *Compare* Fed.R.Evid. 501 *with* Mil.R.Evid. 501–512. The husband-wife privilege under Mil.R.Evid. 504(b)(1) is applicable if there is (1) a communication that is (2) confidential between (3) persons married and not separated at the time of the communication. A communication is confidential if there is (a) physical privacy between the individuals and (b) an intent to maintain secrecy. Mil.R.Evid. 504(b)(2); *see also* E. Imwinkelried, P. Giannelli, F. Gilligan, and F. Lederer, *Courtroom Criminal Evidence* § 1608 at 452 (2d ed.1993). "The privilege may be claimed by the spouse who made the communication or by the other spouse on his or her behalf. The authority of the latter spouse to do so is presumed in the absence of evidence of a waiver." Mil.R.Evid. 504(b)(3).

After a lengthy Article 39(a) session, which focused almost exclusively on who was present when appellant made the incriminating statements to his wife, the military judge held that Mil.R.Evid. 504(b) did not apply. An inherent part of the Article 39(a) session was determining the credibility of the witnesses, particularly that of appellant's wife and SA Penland.

■ "We review a military judge's ruling on a motion to suppress—like other decisions to admit or exclude evidence—for an abuse of discretion." *United States v. Ayala,* 43 MJ 296, 298 (1995). "To reverse for 'an abuse of discretion involves far more than a difference in ... opinion.... The challenged action must ... be found to be "arbitrary, fanciful, clearly unreasonable," or "clearly erroneous" in order to be invalidated on appeal.'" *United States v. Travers,* 25 MJ 61, 62 (CMA 1987) (quoting *United States v. Yoakum,* 8 MJ 763 (ACMR 1980)).

Credibility is an important component of factfinding. The military judge had the responsibility to determine whether the testimony of appellant's wife and SA Penland was credible. Indeed, the factfinder at the trial level is always in the best position to determine the credibility of a witness. There is sufficient evidence in the record to support a finding that someone else was in the room at the time of the conversation. Because we defer to the military judge's assessment of the credibility of the witnesses, we hold that the judge did not abuse his discretion in finding the privilege inapplicable.

The decision of the United States Army Court of Criminal Appeals is affirmed.

Chief Judge COX and Judges GIERKE and EFFRON concur.

Judge SULLIVAN concurs in the result.