**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Senior Airman GREGORY D. WEISS**
**United States Air Force**

**ACM 38611**

**1 December 2015**

Sentence adjudged 27 November 2013 by GCM convened at Hurlburt Field, Florida. Military Judge: Ronald A. Gregory.

Approved Sentence: Bad-conduct discharge, confinement for 18 months, forfeiture of all pay and allowances, and reduction to E-1.

Appellate Counsel for Appellant: Major Jeffrey A. Davis and Captain Lauren A. Shure.

Appellate Counsel for the United States: Major Mary Ellen Payne; Gerald R. Bruce, Esquire; and Mr. Tyler Smith (civilian intern).[1]

Before

ALLRED, MITCHELL, and MAYBERRY
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

MAYBERRY, Judge:

At a general court-martial composed of officer members, Appellant was convicted, contrary to his pleas, of possessing and viewing child pornography in violation of Article 134, UCMJ, 10 U.S.C. § 934. The court sentenced Appellant to a dishonorable discharge, confinement for 18 months, forfeiture of all pay and allowances, and reduction

---

[1] Mr. Tyler Smith was not a licensed attorney during his participation in this case. In accordance with AFCCA Rules of Practice and Procedure 6.1, he was supervised by attorneys admitted to practice before this court.

to E-1. The convening authority lessened the punitive discharge to a bad-conduct discharge, but otherwise approved the sentence as adjudged.[2]

On appeal, Appellant raises the following assignments of error: (1) the evidence was legally insufficient on account of facially defective specifications that resulted in ambiguous findings, (2) the evidence was factually and legally insufficient to support guilt beyond a reasonable doubt,[3] (3) the military judge erroneously permitted the Government to introduce uncharged misconduct both during findings and sentencing without properly instructing the members on any limited use of such evidence, (4) the Air Force Office of Special Investigations (AFOSI) unlawfully searched Appellant's computers, (5) trial defense counsel were ineffective for failing to challenge the search of Appellant's computers, (6) the military judge abused his discretion by allowing statements in violation of the spousal privilege, and (7) Appellant should be granted modest relief due to the Government's repeated violations of his privacy rights in its handling of his mental health records. We disagree and affirm the findings and sentence.

*Background*

On or about 12 July 2012, Appellant and his wife (TW) were involved in a domestic dispute at their on-base home at Hurlburt Field, Florida. This was not the first such event in their brief marriage. Security Forces (SFS) responded to the home, and in addition to her claim of assault, TW alleged Appellant possessed child pornography on his computer. AFOSI was contacted, and they too went to the house. Despite TW's allegations, she was unwilling to be interviewed or turn over any computer. The next day, TW provided two computers to SFS. AFOSI subsequently received one of these two computers on 25 July and the second on 30 July. On 26 July 2012, TW agreed to be interviewed by AFOSI and stated that Appellant had told her there was child pornography on one of the computers, that he had searched online for child pornography, and that he needed to clean the computer. TW had not personally seen any child pornography on the computer. Sometime between 26 and 30 July 2012, after AFOSI obtained the computers, but before they performed any search of the computers, the computers were returned to Appellant. Shortly thereafter, AFOSI sought and obtained probable cause search authorization from a military magistrate and seized the computers on 1 August 2012.

---

[2] Post-trial processing delay was a significant basis for the change in discharge characterization. The length of time from announcement of sentence to convening authority action was 181 days. Appellant sought clemency in the form of a reduction in confinement. He alleged error in that he had met a parole board without the benefit of having a record of trial, his ability to appeal his convictions had been delayed, and the delay added to his anxiety. The addendum to the staff judge advocate's recommendation recommended substituting a bad-conduct discharge for the dishonorable discharge considering all matters of record, particularly the post-trial delay. Appellate counsel did not request further relief pursuant to *United States v. Moreno,* 63 M.J. 129, 135 (C.A.A.F. 2006), or *United States v. Tardif,* 57 M.J. 219 (C.A.A.F 2002), and we do not believe that additional relief is warranted.

[3] Appellant raises this issue pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

Contemporaneous with his conversations with his wife, Appellant also made statements to Staff Sergeant (SSgt) AS, a friend and co-worker who was also a friend of TW. Appellant divulged to SSgt AS, in the presence of others, that he had been kidnapped and forced to do things with younger kids and he thought it was recorded. Appellant also told SSgt AS that he wanted to try to figure out if those videos were online so he searched for similar images online. Appellant was uncomfortable and nervous after law enforcement seized his laptops and told SSgt AS that he wanted them returned. After they were returned, he mentioned to SSgt AS that he needed to perform a "dry scrub."

Forensic analysis of both hard drives from Appellant's computers revealed images of suspected minors engaged in sexually explicit conduct (child pornography).[4] The forensic analyst also produced an Internet history report and a "link" file report. These reports established that a number of files with naming conventions indicative of child pornography had been downloaded from a peer-to-peer file sharing program and opened on the computer in 2009. None of the files named in the Internet history or "link" reports could definitely be associated with the images offered.

Pretrial motion litigation involved what images would be admitted, including a request to exclude any files found in unallocated space of Appellant's computers. Trial defense counsel argued that files found in unallocated space provide no information as to when they were created, when they were deleted, the source from which they were downloaded, or if they were ever viewed. During oral argument on the motion, the defense expanded its objection to include a statute of limitations basis for excluding these images. The military judge ruled that there was circumstantial evidence that the offenses occurred within the five-year statute of limitations. The military judge also ruled that the issue of whether files contained within unallocated space constituted possession was a factual question for the finder of fact and there was sufficient evidence for it to go to the members.

Additionally, two images found in allocated space, one of which was "last written"[5] in May 2008, were offered as non-sexually explicit photos of a minor who appeared to be the same minor depicted in one of the sexually-explicit videos. These were offered for two reasons: (1) to show absence of mistake/proof of knowledge under Mil. R. Evid. 404(b) and (2) to establish circumstantial evidence that Appellant exercised dominion and control over the file—represented by report item number four of Prosecution Exhibit 3—during the charged time frame. The military judge admitted them under Mil. R. Evid. 404(b) and later allowed them to be used as circumstantial evidence.

---

[4] Initially, Appellant was charged with three specifications each of possessing and viewing child pornography. These specifications involved two computers. At trial, the Government withdrew all but one specification each of possessing and viewing child pornography. These specifications involved images located on a single computer. As a result, the proffered number of images went from 23 to 11. No specific images were charged.

[5] The expert witness testified that "last written" indicates that the file was viewed in that format on the date associated with the thumbs.DB file. This record is not impacted by antivirus or malware scans, which would modify the "last accessed" date recorded.

At trial, the Government offered 11 suspected child pornography images, the "link" file report, the Internet analysis report, and statements made by Appellant. In addition to the statements made to his wife and SSgt AS, the Government offered statements made by Appellant to his First Sergeant regarding what might be on his computer and to another military member confirming that there had been child pornography on his computer put there by his wife, but he deleted it.

The members found Appellant guilty of possessing and viewing images in the continental United States and Italy but not guilty of possessing and viewing images in Iraq. Trial defense counsel moved to combine the offenses for sentencing purposes. The military judge granted that motion.

Additional facts necessary to resolve the assigned errors are included below.

*Sufficiency of Evidence*

We review issues of factual sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

The test for legal sufficiency of the evidence is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *Turner*, 25 M.J. at 324. "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001).

The record shows that the members were required to determine whether one or more images constituted sexually explicit conduct based on the definition and explanation given by the military judge. Appellant contends for the first time that his convictions in violation of Article 134, UCMJ, were legally insufficient because the offense charged was possession and viewing of multiple images of "a minor"—indicating one minor—and the images admitted were of more than one minor. Appellant relies on *United States v. Walters*, 58 M.J. 391, 395 (C.A.A.F. 2003), for the proposition that since there is no way to determine which minor was the basis for the panel members' finding of

guilty, the general verdict is ambiguous and consequently we are unable to affirm. We disagree.

Throughout the trial there was no assertion by trial defense counsel that their understanding of the offenses charged involved allegations of viewing multiple depictions of only a single minor. The evidence provided in discovery and offered and admitted at trial clearly depicted multiple minors engaging in sexually explicit conduct. At no time during the pretrial motions involving admission of the images did the defense assert that images of more than one child would be "uncharged misconduct."

During oral argument on the motion in limine to exclude images found in unallocated space, the defense challenged the ability of the unallocated evidence to establish Appellant knowingly possessed or viewed the deleted images or any other child pornography. The majority of the Government's evidence was circumstantial other than numerous statements by Appellant.

Appellant's hard drive contained one depiction of child pornography in the allocated space, which was found in the art cache folder of Media Player.[6] Appellant's computer also had multiple video depictions of child pornography in the unallocated space.[7] According to the expert witness, data on unallocated space is not actually removed; it is merely designated as "unallocated" space which can then be overwritten at a later time, and one cannot retrieve images on unallocated space without a special computer retrieval program. The average computer user would not have such a program and Appellant did not have that type of program on his computer. The expert witness acknowledged that there is no way to tell how or when an image or data in unallocated space was so designated or by whom.

The Government presented strong circumstantial evidence that Appellant was the individual who was using the computer during the relevant time period of May 2008 and March 2009 when images number one and number four of Prosecution Exhibit 3 were previewed and/or downloaded. The operating system was registered to Appellant and one profile was tied to the owner. That profile was password protected. The expert witness testified that the "link" files report and Internet history analysis report showed Appellant's OWNER profile associated with downloaded uniform resource locators (URLs) consistent with naming conventions of child pornography, establishing that he accessed or opened said URLs between May 2008 and March 2009. Additionally,

---

[6] An art cache file is created when the user opens a file or video using Media Player. The system creates a file using images associated with the file. This cache file will remain even after the original file or video is deleted. Thumbnails will also remain in the "thumb cache" even after the original file or picture was deleted.

[7] Due to software issues, this court was unable to view seven of the video files contained on the sealed disk submitted with the record of trial. However, there was a "screen capture" for each of these items which clearly depict minors engaged in sexual acts and suggestive poses. Additionally, each item was described on the record and the record does not indicate that the members were unable to view the files at the time of trial.

Appellant told both his wife and SSgt AS that he had downloaded child pornography and that it was still on the computer. We find sufficient evidence to conclude that Appellant possessed and viewed report items number one and number four of Prosecution Exhibit 3, which contain depictions of minors engaging in sexually explicit conduct. These two images alone would support the finding that Appellant knowingly possessed at least two images of child pornography during the charged time frame.

We conclude the evidence is both factually and legally sufficient to establish Appellant knowingly possessed at least two images of child pornography as early as May 2008 and viewed these videos while they were downloading. Having evaluated the entire record of trial, we are, therefore, convinced Appellant's conviction for viewing one or more visual depictions of minors engaged in sexually explicit conduct is legally and factually sufficient, based solely on these two images. But, in this case, there were nine additional images

With regard to the nine additional videos offered, all of these were found in unallocated space, rather than in locations where computer users typically save or store files. The expert witness testified that for information to be found in unallocated space it must have been on the system at one point in time and then deleted. The expert witness did not find the original photographs or videos that resulted in the creation of these files, could not determine the file names of the original photographs or videos that resulted in these files, or when a user downloaded or viewed those items. While it is true that these files were found in areas of the computer that an average user could not access without specialized computer software, none of which was found on Appellant's computer, there was direct evidence from Appellant's statements that he knew images were still on his computer and he "needed to magnetically erase them" and do a "hard drive scrub." *Cf. United States v. Sanchez*, 59 M.J. 566, 570 (A.F. Ct. Crim. App. 2003) (upholding a possession conviction based on deleted files and files located in the computer's cache based on other evidence, including the accused's relative sophistication in computer matters), *aff'd in part, rev'd in part on other grounds*, 60 M.J. 329 (C.A.A.F. 2004). *But see United States v. Flyer*, 633 F.3d 911, 919–20 (9th Cir. 2011) (holding that evidence was legally insufficient to prove knowing possession of child pornography in unallocated space); *United States v. Moreland*, 665 F.3d 137, 154 (5th Cir. 2011) (refusing to find constructive possession of child pornography in unallocated space without additional evidence of the defendant's knowledge and dominion or control of the images); *United States v. Kuchinski*, 469 F.3d 853, 863 (9th Cir. 2006) (holding that a defendant who lacks knowledge about and access to cache files should not be charged with possessing child pornography images located in those files without additional evidence of dominion and control over the images).

We have considered the elements of the charged offense. We have considered the evidence in the light most favorable to the prosecution and find the evidence legally sufficient to support the conviction that Appellant knowingly possessed and viewed

multiple images of minors engaged in sexually explicit conduct. Moreover, having made allowances for not having personally observed the witnesses, we are ourselves convinced of Appellant's guilt beyond a reasonable doubt of the approved charge and specifications.

## *Uncharged Misconduct*

Appellant continues his allegation that he was alleged to have only possessed and viewed images of a single minor by asserting that the military judge erroneously permitted the introduction of "uncharged misconduct"—images of more than one minor—in both the findings and sentencing portions of the trial without properly instructing the panel members on the limited uses of that evidence. Appellant now asserts that there was no Mil. R. Evid. 404(b) analysis done and correspondingly no limiting instructions provided.

A military judge's decision to admit evidence is reviewed for an abuse of discretion. *United States v. Ediger*, 68 M.J. 243, 248 (C.A.A.F. 2010). Failure to object forfeits appellate review absent plain error. *United States v. Eslinger*, 70 M.J. 193, 197–98 (C.A.A.F. 2011); Rule for Courts-Martial (R.C.M.) 1001(b)(2). "To prevail under a plain error analysis, [the appellant bears the burden of showing] that: '(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right.'" *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005) (quoting *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)).

Here, the evidence that Appellant asserts was improperly admitted for both findings and sentencing was Prosecution Exhibit 3, the images of alleged child pornography. Since the images contain more than one minor, Appellant now asserts that these photos or videos constitute uncharged misconduct and are thereby inadmissible unless they meet one of the narrow exceptions of Mil. R. Evid. 404(b). At trial, defense counsel did not object to the admission of Prosecution Exhibit 3 during findings, did not request a bill of particulars regarding what "minor" was the subject of the specifications, or request an instruction limiting the use of the images contained in Prosecution Exhibit 3. We, therefore, review the military judge's admission of evidence and the failure to instruct the members for only plain error. We find there was no error in admitting the images that were the evidence of the offenses charged, thereby negating any need for a limiting instruction.

## *Unlawful Search of Computers*

Military Rule of Evidence 311(a)(1) requires the defense to make a timely objection at trial to suppress the results of an unlawful search and seizure. Paragraph (d)(2)(A) further states that failure to raise a timely suppression motion constitutes waiver of the issue. "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" *United*

*States v. Olano*, 507 U.S. 725, 732 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). "[T]here is a presumption against the waiver of constitutional rights, and for a waiver to be effective it must be clearly established that there was an intentional relinquishment of a known right or privilege." *United States v. Harcrow*, 66 M.J. 156, 157 (C.A.A.F. 2008) (internal quotation marks and citation omitted). Where Appellant alleges constitutional errors for the first time on appeal, given the "presumption against the waiver of constitutional rights" and the requirement that a waiver "clearly establish[] . . . an intentional relinquishment of a known right or privilege," reviewing courts will often apply a plain error analysis rather than consider the matter waived. *United States v. Sweeney*, 70 M.J. 296, 303–04 (C.A.A.F. 2011).

Appellant did not file a motion challenging the search of the computer. Consequently, Appellant asserts that even under a plain error analysis he should prevail. Appellant alleges that the information providing the basis of the search authorization was illegally obtained in violation of the spousal privilege (error which Appellant alleges was plain and obvious) and the evidence found on the computer should be excluded as "fruit of the poisonous tree;" and without this evidence the Government would not have been able to present sufficient, independent evidence to garner a conviction (prejudicial in that it would have been case dispositive). We disagree.

Although there was no motion to suppress the search of the computers filed by the trial defense counsel, trial defense counsel did file a motion to suppress Appellant's statements regarding his search for child pornography and the presence of child pornography on his computers pursuant to the spousal privilege contained in Mil. R. Evid. 504. While these facts do not overcome the trial defense counsel's forfeiture of the issue of unlawful search, it is relevant as to whether or not the actions of trial defense counsel amounted to waiver. Spousal privilege is the crux of the potential motion. Our review of the actions by trial defense counsel leads us to conclude that they vigorously pursued efforts to suppress Appellant's statements and exclude the bulk of the evidence found on the computers.

In this claim of error, Appellant asserts that the search of his computers was unlawful because the facts provided by TW to AFOSI on 26 July 2012 and the first of three subsequent monitored[8] phone calls between Appellant and TW which took place on 1 August 2012 formed the sole basis of the probable cause used to obtain search and seizure authority from the military magistrate. During the first phone call, Appellant stated there was child pornography on his computer, that he downloaded it in 2008 while deployed, and that he knew that deleting it would not get rid of it and he needed to magnetically erase the hard drive. Appellant also revealed that as a teenager he had been

---

[8] During these monitored phone calls, Appellant's wife called him using her cell phone with a speaker phone while two AFOSI agents listened to the conversation and took notes. Each agent was responsible for noting the statements of one party. Unlike a "pretext" phone call, monitored phone calls are not recorded and do not require HHQ approval. The Government did not offer any statements made during the second and third calls.

kidnapped and sexually assaulted by someone wearing a mask and he thought the incident might have been taped. Appellant asserts the statements from Appellant's wife cannot be used as the basis for search authorization. Appellant's counsel states that they were unable to find case law directly on point, but assert that a plain reading of the rule leads to the logical conclusion that the spousal privilege applies during the investigative stage.

In *United States v. Lovell*, 8 M.J. 613 (A.F.C.M.R. 1979), the court held that the testimonial privilege conferred by Mil. R. Evid. 504 does not extend to preventing a spouse from furnishing evidence which provides probable cause for authorizing a search.[9] This precedent would have been virtually impossible to overcome in any challenge of the search based upon the fact that Appellant's wife provided the probable cause. Additionally, the military judge ruled that the facts of this case established that Appellant had divulged the existence of child pornography on his computer to a third party, SSgt AS, who provided evidence to AFOSI the day after the search authorization based on the spousal communications was granted and the computers were seized by AFOSI.

The "inevitable discovery" exception applies when the routine practice and procedures of the law enforcement agents who possess or are actively pursuing evidence or leads would have inevitably led to the obtaining of the evidence in a lawful manner. *United States v. Wicks*, 73 M.J. 93, 103 (C.A.A.F. 2014) (quoting *United States v. Owens*, 51 M.J. 204 (C.A.A.F. 1999)). Here, the evidence provided by SSgt AS would have provided independent probable cause for search authorization, leading to the discovery of the files on Appellant's computer. The search of Appellant's computer was not unlawful.

*Ineffective Assistance of Counsel*

We review claims of ineffective assistance of counsel de novo, applying the two-pronged test the Supreme Court set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *See United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007). The court in *Strickland* also noted that the performance and prejudice prongs of the test can be analyzed independently.

There is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order the court in *Strickland* did, or even to address both components of the inquiry if the appellant makes an insufficient showing on one. A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the appellant as a result of the alleged deficiencies. "The object of an ineffectiveness claim is not to grade counsel's performance." *Strickland*, 466 U.S. at 697. Therefore, this court can evaluate Appellant's ineffective-assistance claim based on

---

[9] Interestingly, this case was proffered by trial counsel during the motion to suppress Appellant's statements to his wife, including those made during the monitored phone calls with AFOSI.

a "lack of sufficient prejudice," without grading counsel's performance. *Id.* "We need not determine whether any of the alleged errors [in counsel's performance] establish[] constitutional deficiencies under the first prong of Strickland . . . [if] any such errors would not have been prejudicial under the high hurdle established by the second prong of Strickland." *United States v. Saintaude*, 61 M.J. 175, 183 (C.A.A.F. 2005).

In this case, the allegation is that trial defense counsel's forfeiture and/or waiver of the motion to suppress the search of the computer prejudiced Appellant. Trial defense counsel's decision to not file a motion to suppress the search was reasonable in light of the *Lovell* ruling. SSgt AS also provided evidence which would have supported a search authorization for the computers, so the evidence found on the computer would have been inevitably discovered. These factors, together with the military judge's admission of Appellant's statements regarding his efforts to search and view child pornography, discussed above, lead us to conclude that Appellant was not prejudiced. Appellant has not met the "very high hurdle" of demonstrating ineffective assistance of counsel.

*Admission of Statements in Violation of Spousal Privilege*

A military judge's decision to admit or exclude evidence is reviewed for an abuse of discretion. *United States v. McElhaney*, 54 M.J. 120, 132 (C.A.A.F. 2000); *see also United States v. Westmoreland*, 312 F.3d 302, 306 (7th Cir. 2002) ("We review the trial court's resolution of a marital privilege issue for an abuse of discretion."). Whether a communication is privileged is a mixed question of fact and law. *McElhaney*, 54 M.J. at 132 (citing *United States v. Napoleon*, 46 M.J. 279, 284 (C.A.A.F. 1997)). "We review a lower court's legal conclusions de novo, but we give a lower court's factual findings more deference, and will not reverse such findings unless they are clearly erroneous." *United States v. Durbin*, 68 M.J. 271, 273 (C.A.A.F. 2010) (quoting *United States v. McCollum*, 58 M.J. 323, 335–36 (C.A.A.F. 2003)).

Mil. R. Evid. 504(b) sets forth the spousal privilege encompassing confidential communications made during marriage. This rule requires three conditions to be met for the privilege to be upheld: (1) a communication, (2) intended to be confidential, (3) between married persons not separated at the time of the communication. *United States v. Peterson*, 48 M.J. 81, 82 (C.A.A.F. 1998). This privilege may be waived under Mil. R. Evid. 510(a) if the holder of the privilege "voluntarily discloses or consents to disclosure of any significant part of the matter or communication under such circumstances that it would be inappropriate to allow the claim of privilege." Communications made in the presence of third parties, or revealed to third parties, are not privileged. *See* Mil. R. Evid. 504(b)(2). Under Mil. R. Evid. 510(a), waiver occurs when a privilege-holder discloses "any significant part of the matter or communication" claimed as privileged. Waiver of the spousal privilege takes place when the "overall substance of the conversation" between spouses is conveyed to a third party. *United States v. Custis*, 65 M.J. 366, 371 (C.A.A.F. 2007) (quoting *McElhaney*, 54 M.J. at 132)).

At trial, the Government wanted to admit three statements made by Appellant to his wife: (1) that child pornography was on his computer, (2) that he had searched online for child pornography, and (3) that he needed to clean his computer. The Government sought to introduce this evidence through the AFOSI Special Agent who overheard these statements during a monitored phone call between Appellant and his wife. Additionally, the Government sought to introduce statements made by Appellant to a co-worker, SSgt AS, where he confided that as a result of being kidnapped as a teenager and possibly recorded while forced to perform sex acts with minors he had looked for pornography of a similar nature, he was worried about what might be on his computers, and he needed to scrub his hard drive. Trial defense counsel filed a motion to exclude any statements made to TW pursuant to the spousal privilege of Mil. R. Evid. 504.

The military judge found that Appellant's statements to his spouse would be protected under Mil. R. Evid. 504, but that "according to the testimony of [SSgt AS], . . . [Appellant] made statements to her which are . . . a significant part of the disclosures to the former spouse. Therefore, the privilege doesn't apply." The military judge also found that if those statements were made during the monitored phone call with AFOSI or any other time, the privilege did not apply because he also made a significant part of those statements to SSgt AS.

The military judge did not abuse his discretion by admitting Appellant's statements. Viewed in the particular factual context of this case, Appellant's statements during the monitored phone call and to SSgt AS revealed a "significant part" and the very substance of his communication to his wife and constitute waiver of his marital communications privilege.

*Violation of Privacy Rights*

Appellant asserts that the "government in general appears to be consistently mishandling the mental health records of the accused during investigation and prosecution of cases." Specifically, Appellant's mental health records are contained within the Pretrial Allied Papers section of the Record of Trial (ROT) as an attachment to the AFOSI Report of Investigation (ROI). Appellant asserts that AFOSI, the military records division, and trial counsel all acted improperly in gathering the records, reviewing the records and including them unsealed in the ROT. Appellant's counsel refers to similar errors in at least two other ROTs, but in those cases the issue was rectified by the trial judge sealing the record.

Appellant's request does not assert that the mental health records were in any way used during the trial. Rather, he requests modest sentence relief based on this court's power and authority to approve only so much of the findings and sentence as it determines, on the basis of the entire record, should be approved, citing *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002). While *Tardif* is generally cited for the

proposition that service courts of review can grant sentence relief on the basis of unexplained and unreasonable post-trial delay under the authority of Article 66(c), UCMJ, the decision is not limited to that scenario. The language cited by Appellant comes from *United States v. Powell*, 49 M.J. 460, 464 (C.A.A.F. 1998). However, *Powell* clearly states Article 59(a), UCMJ, 10 U.S.C. § 859(a), constrains this court's actions regarding forfeited errors unless they "materially prejudice the substantial rights of the accused." *Powell*, 48 M.J. at 465. In addition to the trial counsel, trial defense counsel also had the ROI and took no action to request that these materials be safeguarded from further public view.

We do not believe that the inclusion of Appellant's mental health records alone materially prejudiced a substantial right held by Appellant.[10]

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred.[11] Articles 59(a) and 66(c), UCMJ. Accordingly, the approved findings and sentence are **AFFIRMED**.



FOR THE COURT

LEAH M. CALAHAN
Clerk of the Court

---

[10] We do find that the records should be sealed and order that the Government take the necessary actions to do so.

[11] The court-martial order (CMO) contains a clerical error in that it states the offenses occurred within the continental "Unites States." It should state that the offenses occurred within the continental "United States." We order a corrected CMO. Rule for Courts-Martial 1114; Air Force Instruction 51-201, *Administration of Military Justice*, ¶ 10.10 (6 June 2013).