# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 40501**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Mark L. MARTELL**
Senior Master Sergeant (E-8), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 17 October 2024

————————————

*Military Judge*: Matthew P. Stoffel.

*Sentence*: Sentence adjudged 1 April 2023 by GCM convened at Travis Air Force Base, California. Sentence entered by military judge on 22 May 2023: Dishonorable discharge, confinement for 18 months, reduction to E-1.

*For Appellant*: Major Heather M. Bruha, USAF;[1] Frank J. Spinner, Esquire.

*For Appellee*: Lieutenant Colonel J. Peter Ferrell, USAF; Major Regina Henenlotter, USAF; Mary Ellen Payne, Esquire.

Before ANNEXSTAD, DOUGLAS, and PERCLE, *Appellate Military Judges*.

Judge DOUGLAS delivered the opinion of the court, in which Senior Judge ANNEXSTAD and Judge PERCLE joined.

————————————

---

[1] Major Bruha is also identified in Appellant's record of trial under a previous surname, Caine.

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————————

DOUGLAS, Judge:

A general court-martial composed of officer and enlisted members convicted Appellant, contrary to his pleas, of one specification of sexual assault upon LN in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920.[2] Appellant was acquitted of one specification of abusive sexual contact upon LN in violation of Article 120, UCMJ, 10 U.S.C. § 920.[3] The military judge sentenced Appellant to a dishonorable discharge, 18 months' confinement, and reduction to the grade of E-1. The convening authority took no action on the findings but modified the sentence. The convening authority suspended the adjudged reduction in rank for six months and waived the automatic forfeitures of pay for six months, directing the waived forfeitures of total pay to be paid to Appellant's spouse for the benefit of herself and their dependent children.

Appellant raises one issue on appeal: whether Appellant's conviction is legally and factually sufficient. We find no error that materially prejudiced Appellant's substantial rights, and we affirm the findings and the sentence.

## I. BACKGROUND[4]

On 17 July 2021 Appellant and his spouse, Master Sergeant (MSgt) LM, hosted a small party at their off-base home. They were both active duty servicemembers stationed at Travis Air Force Base, California. The guests were co-workers and friends, and the party was to celebrate the military retirement of EH and the promotion of Technical Sergeant (TSgt) AP. In addition to Appellant, his spouse, their children, EH, and TSgt AP, the people in attendance included ML (TSgt AP's fiancé), TSgt JR, MSgt AA, and the named victim, LN.[5] Appellant's home had a backyard swimming pool where everyone, was "hanging out." They were drinking alcohol (except the children), eating food,

---

[2] Unless otherwise noted, all references to the UCMJ are to the *Manual for Courts-Martial, United States* (2019 ed.).

[3] Appellant was charged with "touch[ing] the buttocks and breast" of LN, with an intent to gratify his sexual desire, without her consent, but was acquitted of this specification.

[4] The following background is drawn primarily from LN's testimony, supplemented by other evidence from the record of trial.

[5] At the time of the incident, LN was a member of the Air Force.

swimming, lounging on the deck furniture, and listening to music. Around 2200, EH, TSgt JR, TSgt AP, and ML left the party.

Because they were drinking alcohol, LN and MSgt AA had planned to stay overnight in a guest bedroom. Around the time other guests left the party, LN was resting on the living room couch. She was tired, so she moved to the guest bedroom, which was on the main floor, near the kitchen. Before going to sleep, LN removed her denim shorts but kept on a one-piece bathing suit. She was dozing off, nearly asleep when someone came into the room and started "messing" with the comforter. LN felt hands coming from "underneath the comforter from the bottom of the bed." At least one hand "went up [her] leg and up to the bathing suit and [tried] to pull" the crotch area of the bathing suit to the side. LN laid there "in shock" and felt "fingers enter[ ] her vagina" followed by what she described as a "pulling" action. She estimated three fingers were inside her at once, "past the second knuckle." LN described the feeling as "uncomfortable." She began to "actively move" to get away, flipping from her back to her stomach. All the while, LN could hear voices outside the room but did not say anything to call attention to her situation. Although the room was dark and she could not see his face, she knew the person who touched her in the room was Appellant because of the way he smelled and because he was the only man left in the house at the time. Eventually, Appellant removed his fingers from her vagina. She "dropped [her] legs over the side of the bed and then just dropped to the ground and crawled into a ball." The comforter came down with her. Appellant "backed off behind her" and left the room. While he was in the room, the only word LN heard him say was "okay."

Appellant testified, under oath, in his defense. According to his testimony, the sexual activity between him and LN was "one hundred percent consensual." He explained that after LN went to the guest bedroom, he headed towards the bathroom, which was across from the guest bedroom. When Appellant reached the bathroom, he saw LN in the doorway of the guest bedroom. According to Appellant, when LN saw him, she told him, "Hey, Mark come here." Appellant asked her if everything was okay. LN did not answer. Instead, she led him to the bed, sat down, "grabbed [his] hand" and put it "on her vagina area." She told him that she had had a wax treatment earlier in the day and that her skin felt smooth "as a dolphin." She "proceeded to do a back-and-forth motion with [his] hand and her hand and masturbat[ed] herself." Then, "she reach[ed] over to [his] penis and proceed[ed] to jerk [him] off." In his testimony, Appellant claimed that he "told her we need to stop, it's – this is getting out of control – it's wrong." According to Appellant, LN responded, "[N]o, no, no," and shook her head. She got "in the fetal position on the bed, and she just started, like, whimpering." When Appellant saw her reaction, he walked out. Appellant

did not admit to digitally penetrating LN's vulva. He estimated the total time he spent with LN in the guest bedroom was "roughly five minutes."

After he left the guest bedroom, Appellant went to the bathroom. His son walked in after him to ask him something and, according to Appellant, he "shooed" his son away because Appellant was about "to pee" and wanted privacy.

MSgt AA was in the kitchen talking with Appellant's spouse, MSgt LM. Due to the way MSgt AA was positioned in the kitchen, she "had a clear line of sight" and saw Appellant leave the guest bedroom and go into the bathroom. She recalled that MSgt LM's son had just asked MSgt LM if he could have some ice cream and MSgt LM told him to go find his dad and ask him. MSgt AA saw Appellant's son go upstairs, then come back downstairs right as Appellant was going into the bathroom. MSgt AA saw Appellant say "shhh" to his son while motioning his finger to his mouth. The son came back to tell MSgt LM that Appellant didn't answer his question, but instead told him to "shhh." MSgt AA got a "bad feeling" about the situation. Believing "there was something wrong," she left the kitchen to check on LN.

MSgt AA opened the guest bedroom door and found LN "cowering under the covers." There was enough light shining into the room for MSgt AA to see that LN's face was "red," and she was "shaking." LN told MSgt AA to come in and shut the door. Before closing the door, MSgt AA directed MSgt LM to follow her into the guest bedroom because MSgt AA felt like LN was "about to say something [that MSgt LM] probably needed to hear." After hearing LN tell them what happened, MSgt AA left the room to find LN's belongings. MSgt AA saw Appellant in the kitchen washing the dishes, "kind of mumbling to himself." MSgt AA found LN's belongings but when she went back to the guest bedroom, LN and MSgt LM were gone. MSgt LM had opened the bedroom window, popped out the screen, and helped LN leave the bedroom through the window. They went outside to the front of the house, where they met up with MSgt AA, who drove LN home.

MSgt AA stayed with LN while she showered and changed. They talked and went to sleep. Later, MSgt AA took LN to the emergency room because LN complained of pain. Appellant's DNA (deoxyribonucleic acid) was not detected in the samples collected during the forensic medical exam. However, "abrasions and lacerations" to LN's vaginal area were observed, documented, and photographed. The nurse examiner could not opine whether the sexual act was consensual based on these injuries.

**II. DISCUSSION**

**A. Law**

We review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted).

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (quoting *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017)). "The term reasonable doubt, however, does not mean that the evidence must be free from conflict." *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (citing *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986)), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). As a result, "[t]he standard for legal sufficiency involves a very low threshold to sustain a conviction." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (alteration in original) (citation omitted). The test for legal sufficiency "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *United States v. Oliver*, 70 M.J. 64, 68 (C.A.A.F. 2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1973)).

In order to convict Appellant of sexual assault of LN as charged in this case, the Government was required to prove that at or near Fairfield, California, on or about 17 July 2021: (1) Appellant committed a sexual act upon LN by penetrating her vulva with his finger; and (2) the sexual act was without her consent. *See Manual for Courts-Martial, United States* (2019 ed.) (*MCM*), pt. IV, ¶ 60.b.(2)(d)(i), (ii). "The term 'sexual act' means . . . penetration, however slight, of the vulva . . . by any part of the body . . . with an intent . . . to . . . gratify the sexual desire of any person." *MCM*, pt. IV, ¶ 60.a.(g)(1)(C).

Article 66(d)(1), UCMJ, provides:

(B) FACTUAL SUFFICIENCY REVIEW.

(i) In an appeal of a finding of guilty under subsection (b), the Court may consider whether the finding is correct in fact upon request of the accused if the accused makes a specific showing of a deficiency in proof.

(ii) After an accused has made such a showing, the Court may weigh the evidence and determine controverted questions of fact subject to—

> > (I) appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence; and

> > (II) appropriate deference to findings of fact entered into the record by the military judge.

> (iii) If, as a result of the review conducted under clause (ii), the Court is clearly convinced that the finding of guilty was against the weight of the evidence, the Court may dismiss, set aside, or modify the finding, or affirm a lesser finding.

10 U.S.C. § 866(d)(1) (*Manual for Courts-Martial, United States* (2024 ed.) (2024 *MCM*)). This factual sufficiency standard applies to courts-martial in which every finding of guilty in the entry of judgment is for an offense occurring on or after 1 January 2021. *See* The National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116–283, § 542(e)(2), 134 Stat. 3388, 3612–13 (1 Jan. 2021).

The requirement of "appropriate deference" when a Court of Criminal Appeals weighs the evidence and determines controverted questions of fact "depend[s] on the nature of the evidence at issue." *United States v. Harvey*, ___ M.J.___, No. 23–0239, 2024 CAAF LEXIS 502, at *8 (C.A.A.F. 6 Sep. 2024). This court has discretion to determine what level of deference is appropriate. *Id*. "[T]he quantum of proof necessary to sustain a finding of guilty during a factual sufficiency review is proof beyond a reasonable doubt, the same as the quantum of proof necessary to find an accused guilty at trial." *Id*. at *10 (internal quotation marks omitted). For this court "to be clearly convinced that the finding of guilty was against the weight of the evidence, two requirements must be met." *Id*. at *12 (internal quotation marks omitted). First, we must decide that the evidence, as we weighed it, "does not prove that the appellant is guilty beyond a reasonable doubt." *Id*. Second, we "must be clearly convinced of the correctness of this decision." *Id*. "[T]he factfinder at the trial level is always in the best position to determine the credibility of a witness." *United States v. Peterson*, 48 M.J. 81, 83 (C.A.A.F. 1998).

**B. Analysis**

Viewing the evidence in the light most favorable to the Government, we conclude that the panel members could have rationally found beyond a reasonable doubt that Appellant was guilty of sexually assaulting LN. *Robinson*, 77 M.J. at 297–98. Appellant testified under oath that LN "100 percent" consented to sexual activity. However, in addition to LN's testimony, the Government was able to present substantial corroborative evidence for an allegation of nonconsensual digital penetration. LN testified that without her consent, Appellant digitally penetrated her with three fingers, and that those fingers were inside of her vulva past the second knuckle. She described the movement of the

fingers as a pulling action. She testified that she moved her body to get away from Appellant and that once she did get away from him, he left the room. Corroborative evidence admitted at trial showed that LN was first discovered in an emotional state consistent with a nonconsensual encounter. Additionally, Appellant's spouse helped LN leave the bedroom through the bedroom window instead of walking out the bedroom door. LN sought medical attention due to the pain she felt the next day, and, through examination, her injuries were discovered and documented. The nurse examiner testified that the injuries were consistent with LN's account, though she could not opine whether the injuries were the result of a consensual or nonconsensual encounter. Considering the evidence in the light most favorable to the Prosecution, we conclude the findings are legally sufficient. *See id.*

Regarding the factual sufficiency of the same conviction, Appellant has made a request for a factual sufficiency review asserting the Government did not prove LN did not consent. Appellant directs us to what he depicts as inconsistencies in LN's testimony, putative various motives to fabricate, and an assertion that Appellant would not have known she had had a wax that day but for LN inviting him into her room and telling him so.

We have considered whether the challenged findings in this case are correct in fact. After weighing all the evidence and having given appropriate deference to the fact that the trial court saw and heard the witnesses, this court is not clearly convinced that the finding of guilty was against the weight of the evidence. Thus, the findings are factually sufficient. *See* Article 66(d)(1)(B), UCMJ (2024 *MCM*).

### III. CONCLUSION

The findings and the sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

7